UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|                                    |   |                        |
|------------------------------------|---|------------------------|
| ALBERTA FLOYD, Individually        | : |                        |
| and as Administrator of the        | : |                        |
| Estate of Jacqueline Ann           | : |                        |
| Adams, Deceased, et al.,           | : | NO. 1:05-CV-00389      |
|                                    | : |                        |
|     Plaintiffs,| : |                        |
|                                    | : |                        |
|     v.         | : | **OPINION AND ORDER**  |
|                                    | : |                        |
| PRIDE MOBILITY PRODUCTS            | : |                        |
| CORP.,                             | : |                        |
|                                    | : |                        |
|     Defendant. | : |                        |

This matter is before the Court on Defendant's Motion to Exclude Testimony of Plaintiffs' Expert Witnesses (doc. 60), Plaintiffs' Response (doc. 86), and Defendant's Reply (doc. 89). Also before the Court are Defendant's Motion for Summary Judgment (doc. 75), Plaintiffs' Response (doc. 93), and Defendant's Reply (doc. 96); Plaintiffs' Motion for Partial Summary Judgment to Strike Defendant's Affirmative Defenses (doc. 80), Defendant's Response (doc. 90), and Plaintiffs' Reply (doc. 95); and Plaintiff's Motion for Voluntary Dismissal of the Fourth Cause of Action in the Second Amended Complaint (doc. 81). For the reasons indicated herein, the Court DENIES both of Defendant's Motions, and DENIES Plaintiffs' Motion for Partial Summary Judgment.

Defendant has expressed no opposition to Plaintiffs' Motion for Voluntary Dismissal of their fourth cause of action, for breach of implied warranty. The Court finds such motion well-taken

and in the interests of justice, GRANTS such motion (doc. 81), and DISMISSES Plaintiffs' fourth cause of action.  Fed. R. Civ. P. 41.

## I.  Background

On June 8, 2003, Jacqueline Adams ("Adams"), the Mother of Plaintiffs Alberta Floyd ("Floyd") and Angela Malone ("Malone"), suffered a catastrophic head injury while using Defendant's product, a mobility scooter, in Scioto County, Ohio (doc. 43).  The scooter in question was designed to either be in gear, or with the switch of a lever, to be in a neutral "free wheel" mode (doc. 75). While in free wheel mode, the machine can be pushed manually for short distances so it can be moved without carrying or driving it (Id.).  While in gear, the machine has an automatic braking system, but while in free wheel mode, there is no braking system (Id.). The manual accompanying the scooter, which there is no dispute that Adams read, instructs the user to never mount the machine while in free wheel mode, and to never use the machine on inclines exceeding a slope of five to eight degrees, depending on the weight of the operator (Id.).

According to deposition testimony of Floyd's husband, James Floyd, and Malone's boyfriend, Paul Anderson, they transported the scooter by pickup truck to the place of the accident, the home of the Castle family in Valley Township (doc. 93).  Both indicate that the scooter did not roll back and forth during transport or during loading and unloading, which suggests

2

the machine was in gear (Id.).   Both also testified they did not touch the lever so as to take the machine out of gear (Id.).  When they unloaded the scooter, they placed it on a "relatively level" area of the driveway, leading to a slope of approximately eleven degrees (Id.).

The deposition testimony about what happened next is subject to interpretation.  In Defendant's view, it is undisputed that Adams mounted the scooter while it was in free wheel mode (doc. 96).   However,  witness Danny Castle, testified that after Adams mounted the scooter, she sat in it a few seconds, and then "I seen her power away" (doc. 82).  Castle also testified that Adams "pulled away," suggesting that from his viewpoint, though he did not see Adams use the accelerator, the scooter was in gear when Adams  initially  mounted  it  (Id.).    Similarly,  James  Floyd testified that Adams sat on the scooter for a few seconds and then "made it go forward," though he too stated he did not see her use the accelerator (doc. 78).  Plaintiff Floyd testified that Adams "pushed the button to make it move, I mean it was sitting at a complete sit still position and she pushed the button to go" (doc. 64).

Adams gained momentum and speed on the scooter, and could not stop it.  The parties agree that as she descended the driveway, she was in "free wheel," and therefore had no brakes (doc. 93).  At the bottom of the driveway, the scooter flipped and Adams was

3

thrown off, taking a severe blow to her head (Id.).

In their Second Amended Complaint, Plaintiffs bring state law product liability, negligence, and loss of parental consortium claims against Defendant, a Pennsylvania corporation (doc. 43). Specifically, Plaintiffs allege Defendant is strictly liable under Ohio Rev. Code § 2307.75 for defective design of the gear and braking systems in the scooter, strictly liable under Ohio Revised Code § 2307.76 for failing to provide reasonable warnings and instructions on the use of the scooter's gear and braking systems, and is liable in common law negligence for negligent design and failure to adequately warn (Id.).

Defendant denies any design defect, failure to warn, or negligence in relation to its product, and contends that Plaintiffs' Mother misused the scooter, and thus is responsible for her injuries (docs. 46, 75).  Defendant further challenges the qualifications of the experts who have offered testimony in support of Plaintiffs' claims (doc. 60).  Plaintiffs, in a motion styled as for partial summary judgment, move to strike Defendant's affirmative defenses, including the defenses that their Mother improperly used the scooter or that an intervening cause removes liability for Defendant (doc. 80).

## II.  Defendant's Motion to Exclude Expert Testimony (doc. 60)

Plaintiffs have elicited the testimony of three experts in support of their claims.  Dr. Donald Kasten opined that the

4

scooter has a design defect in that there is allegedly no indicator on the scooter to show whether the scooter is in gear or in free wheel mode, and that there should be a mechanical braking system in addition to the existing automatic braking system (doc. 60). Dr. George Smith opined that it is virtually impossible to grab the free wheel lever and engage it while seated on the scooter, and that the warning sticker on the scooter is inadequate (Id.). Dr. Smith further opined that there should be a warning light indicating when the machine is in free wheel position as soon as the key is placed in the ignition, that the manual warnings were inadequate, and that the scooter needs an "interlock" braking system (Id.). With an "interlock system" one would have to remove the seat to put the scooter in free wheel mode (Id.). Dr. Wright opined that the machine had popped out of gear or was never in gear at the time of the accident, and similarly to the others, he stated the scooter needed a free wheel mode indicator light, mechanical brakes, and a warning label on the scooter (Id.).

Defendant argues the Court should exclude the testimony of Plaintiffs' expert witnesses because none of them have been involved in the design of scooters, and none have ever been involved in the scooter industry (Id.). As such, Defendant argues the experts are unqualified under Fed. R. Evid. 702 (Id.). Defendant, citing Daubert v. Merrill Dow Pharmaceuticals, 509 U.S. 579 (1993), argues Plaintiffs' expert testimony fails as it

constitutes unreliable subjective beliefs and unsupported speculation (Id.). Under Daubert, Defendant submits, the Court should evaluate several factors in assessing the scientific validity of expert testimony, 1) whether the expert's methodology has been subjected to peer review, 2) the rate of error associated with the methodology, 3) whether the methodology is generally accepted within the scientific community, and 4) the testability of the expert's hypothesis (Id., citing 509 U.S. at 593-94). Defendant argues Plaintiffs' experts fail to meet any of the Daubert factors.

First, Defendant argues Plaintiffs' experts used no identifiable methodology, and simply seek to replace established peer-reviewed industry standards with their own unreviewed standards (Id.). Defendant argues its scooter complied with standards of both the American National Standards Institute ("ANSI") and the Rehabilitation Engineering and Assistive Technology Society of North America ("RESNA") criteria for scooters and with applicable Food and Drug Administration ("FDA") regulations (Id.).

Next, Defendant argues that because Plaintiffs' experts provided no methodology through which they reached their opinions, there is no way to determine the rate of error (Id.). Third, Defendant argues Plaintiffs' expert Dr. Wright acknowledged that ANSI/RESNA standards are generally accepted in the industry, and

that none of Plaintiffs' experts provided explanation to justify the acceptance of their opinions over the existing standards (Id.).

Finally, Defendant argues Dr. Wright's test to see if the scooter could pop out of gear failed to provide evidence of that theory, that Dr. Smith has never even seen the scooter, and that the experts failed to show alternate braking and indicator light designs or to propose alternative warnings (Id.). Defendant argues the experts did nothing to test their proposed solutions, and were unable to replicate the problems they believed to be wrong with the scooter (Id.).

In summary, argues Defendant, the testimony here will not assist the trier of fact, because Plaintiffs' experts are unqualified to give testimony on the design defect issue in this case (Id., citing Fed. R. Evid. 702). As such, contends Defendant, the testimony will not assist the trier of fact and should be excluded (Id.).

Plaintiffs respond that though Defendant raises issues that might provide a basis to cross-examine the experts, its arguments are inadequate to justify exclusion of the testimony from trial (doc. 86). Plaintiffs argue Dr. Kasten is a degreed electrical engineer, who disassembled the scooter to evaluate it, and who reviewed the owner's manual (Id.). Dr. Kasten, contend Plaintiffs, is able to testify from an electrical engineering background that the scooter was defectively designed for lacking a

7

failsafe mechanism, such as a power assisted brake or an indicator showing the machine to be in free wheel mode (<u>Id</u>.).

Dr. Smith, argue Plaintiffs, is an expert in mechanical and human factors engineering, who has testified by deposition on more than twenty occasions, participating in cases involving forklift trucks and all-terrain vehicles (<u>Id</u>.). Dr. Smith, submit Plaintiffs, has testified numerous times about warnings, based on his experience in human factors engineering (<u>Id</u>.). Dr. Smith's opinions in this case, argue Plaintiffs, were based on a review of the documents produced in discovery, photographs of the scooter, and information about the slope of the hill at the scene of the accident (<u>Id</u>.). Moreover, they argue, Smith's opinions on the use of the word "danger" as opposed to the word "warning" is supported by literature in the human factors engineering field (<u>Id</u>.).

As for Dr. Wright, Plaintiffs submit he is a mechanical engineer with expertise as a technical consultant on force analysis and dynamics, accident reconstruction, and as a product designer (<u>Id</u>.). Dr. Wright has done extensive work with all-terrain vehicles, testifying as to their safety, whether design defects exist, and as to braking issues (<u>Id</u>.). Wright has been called to testify before the U.S. Senate as to the effectiveness of ANSI standards, which he opines are "extremely subpar and inadequate" (<u>Id</u>.).

Plaintiffs argue the expert testimony they offer will

8

assist the triers of fact, and each expert is qualified to do so (Id.). Citing <u>Benton v. Ford Motor Co.</u>, 492 F. Supp.2d 874, 877 (S.D. Ohio 2007), Plaintiffs argue that where a jury is instructed to determine for itself the proper weight to give to expert testimony, and where such testimony is subject to cross examination, the Court should not exclude expert testimony on the grounds that it falls outside the witness's area of expertise (Id.). Plaintiffs contend that in <u>Benton</u>, an automobile design defect case, the Court admitted the testimony of an electrical engineer despite the fact the engineer had never published an article nor been employed in the automobile industry (Id.). As the <u>Benton</u> court found it "immaterial" whether the expert had ever worked in the automobile industry, and found the expert had relevant experience in dynamics and accident reconstruction, Plaintiffs argue the Court should find similarly here that their experts are qualified to testify (Id.).

Plaintiffs further argue their experts meet the <u>Daubert</u> requirements for reliability (Id.). Plaintiffs argue all of the opinions are based on principles embodied in relevant, recognized scientific disciplines and theories (Id.). Additionally, the curriculum vitae of each shows they are members of various organizations devoted to the review and publication of their respective disciplines (Id.). Similarly, argue Plaintiffs, based on the pervasiveness of the disciplines, the inference is that the

rate of error is low (Id. citing Benton, 492 F. Supp.2d at 879).
Moreover, the general acceptance of the expert's disciplines and
theories is well-established in the technical community so as to
alleviate any of Daubert's concerns about "junk science" (Id.).
Finally, Plaintiffs argue their experts have inspected the scooter,
taken it apart and examined its components, physically tested it,
and offered solutions to the defects they found (Id.).
Additionally, their experts have provided reports detailing their
calculations and methods used in reaching their conclusions (Id.).
All such methodology, argue Plaintiffs, is capable of being tested,
and therefore passes muster (Id.).

    Defendant replies that this case is distinguishable from
Benton, because unlike the expert in that case, who had experience
in the area of accident rollovers, the experts in this case have no
experience in scooter accidents (doc. 89). Defendant argues
further that Drs. Wright, Kasten, and Smith lack relevant
experience in analyzing the design of scooters or the cause of
scooter accidents (Id.). Defendant argues the Court should follow
Mohney v. USA Hockey, Inc., 138 Fed. Appx. 804 (6th Cir. 2005), and
find the expert testimony here should be excluded for lack of
testing (Id.).

    Having reviewed this matter, the Court finds Plaintiffs'
position well-taken that this case is on par with Benton, and
therefore the experts are qualified to testify as to their

10

respective opinions. Defendant seeks to impose onerous conditions upon the Plaintiffs, as the Court finds no valid basis for the argument that these experts are unqualified for lack of experience in the "scooter industry." Each expert is qualified to assist the trier of fact with their opinions, which can be tested on cross examination. <u>Benton</u>, 492 F. Supp.2d 874, 877. Moreover, Defendant's reliance on <u>Mohney v. USA Hockey, Inc.</u>, 138 Fed. Appx. 804 (6th Cir. 2005) is misplaced, as in that case, the Court found the expert opinions were based on estimates and assumptions rather than on data sufficiently tied to the facts. The Court therefore based its rejection of the expert testimony in <u>Mohney</u> on more than just a lack of testing. <u>Mohney</u> is not on point with the facts here, where the Court finds the opinions are based on sufficient data related to the scooter in question and the accident scene. The opinions are sufficiently grounded in the relevant engineering disciplines so as to justify their admission. For these reasons the Court rejects Defendant's motion to exclude the testimony of Plaintiffs' expert witnesses.

**III. Defendant's Motion for Summary Judgment**

### A. Summary Judgment Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

11

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curium). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by

merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive

13

summary judgment and proceed to trial on the merits.  Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted).  In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment.  See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990).  The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962).  Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion.  See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute.  See Matsushita, 475 U.S. at 587.  The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the

14

Court to demonstrate that summary judgment is appropriate. <u>See</u> <u>Guarino</u>, 980 F.2d at 410; <u>Carver v. Bunch</u>, 946 F.2d 451, 454-455 (6th Cir. 1991).

### B. Defective Design Theory

Defendant brings its Motion for Summary Judgment, arguing that reasonable minds construing the evidence as favorably as possible to Plaintiffs could only resolve their claims in favor of Defendant (doc. 75). Defendant first argues Plaintiffs have failed to proffer evidence to support their design defect theory (<u>Id</u>.). Under the applicable Ohio statutory and common law, two alternative theories can advance a claim for strict product liability for defective design, 1) the consumer expectation standard, and 2) the risk-benefit standard. Ohio Revised Code § 2307.75 (Anderson 2003), <u>Perkins v. Wilkinson Sword, Inc.</u>, 83 Ohio St.3d 507 (1988), <u>Knitz v. Minster Machine Co.</u>, 69 Ohio St.2d 460 (1982)(superceded by statute on other grounds as indicated in <u>Gilbert, ex. rel Gilbert v. Bayerische Motoren Werke, A.G.</u>, No. 18319, 1993 Ohio App. LEXIS 5966 (Ohio Ct. App., December 17, 1993)). The standards are not mutually exclusive, such that if a jury finds that one standard is not met, it can still consider the other standard and find liability. <u>Perkins</u>, 83 Ohio St. 3d at 508.

Under the consumer expectation standard, a product is defective in design if 1) it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably

forseeable manner, 2) the claimed defect was present when the product left the manufacturer, and 3) the claimed defect proximately caused the claimed injuries. <u>Tompkin v. Phillip Morris USA, Inc.</u>, 362 F.3d 882, 901 (6th Cir. 2004). Under the risk-benefit theory, a Defendant may be liable if Plaintiff proves the product design is defective because the benefits of the challenged design do not outweigh the risks inherent in the design. <u>State Farm Fire & Casualty Co. v. Chrysler Corp.</u>, 37 Ohio St.3d 1, 7-8 (Ohio, 1988).[1]

Defendant argues, in the same vein as in the motion above, that Plaintiffs cannot offer competent, expert testimony to

---

[1]Under the version of the statute in effect at the time of the accident, the risks associated with the design of the product are to be determined by, but not limited to, the following four factors, 1)the nature or magnitude of the risks of harm associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product; 2) the likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm; 3) the likelihood that the design or formulation would cause harm in light of the intended and foreseeable uses, modifications, or alterations of the product; 4) the extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer.  Ohio Rev. Code § 2307.75 (Anderson 2003).  Under the same section, the benefits associated with the design of a product are to be determined by, but not limited to, the following three factors, 1) the intended or actual utility of the product, including any performance or safety advantages associated with that design or formulation, 2) the technical and economic feasibility, when the product left the control of the manufacturer, of using an alternative design or formulation, and 3) the nature and magnitude of any forseeable risks associated with such an alternative design or formulation.  <u>Id</u>.

support their design defect claim (doc. 75).  Defendant argues that because it is undisputed that its scooter met ANSI, RENSA, and FDA standards, reasonable minds could only conclude the scooter was properly designed (Id.).  Defendant further argues that Plaintiffs have offered no evidence of a feasible alternative design to the scooter (Id.).  Defendant proffers the testimony of their expert, John Wiechel, who concluded that an additional manual braking system on the scooter would not increase the ability of the scooter to stop, particularly due to the fact of the incline of the driveway in this case (Id.).

As for the Plaintiffs' claims of inadequate warning, Defendant argues that there is no dispute that Adams read the manual--which explicitly instructed the operator to make sure the free-wheel lever was in gear before getting on the scooter (Id.). According to Defendant, the testimony of Malone shows that Adams did not need an indicator light to tell her the scooter was in free wheel mode, because "if she put the key in and she gave it gas and it didn't go nowhere, she knew it was in free wheel" (Id.). Defendant further argues the manual contained warnings about exceeding incline guidelines, and there is no dispute that the incline of the driveway exceeded the maximum slope as set forth in the owner's manual (Id.).  Where a warning in the instruction manual warns against the conduct which leads to an accident, Defendant argues there is no proximate cause and the product is not

17

unreasonably dangerous (<u>Id</u>. <u>citing</u> <u>Freas v. Prater Constr. Corp.</u>,
573 N.E.2d 27 (Ohio, 1991)).

Defendant next argues that Plaintiffs' claim based on the
consumer expectation theory also fails, because each of Plaintiffs'
experts stated that a reasonable consumer would expect that if the
scooter was in free wheel mode and placed on a hill, it would coast
down the hill (<u>Id</u>.).  Defendant argues its expert Peter Nestor,
testified the accident would not have happened had the scooter been
used properly (<u>Id</u>.).

Plaintiffs respond that with their expert testimony they
have raised a genuine issue as to the defectiveness of the design
of the gearing and braking system of Defendant's scooter (doc. 93).
Plaintiffs argue that had the Defendant incorporated the reasonable
safety features suggested by their experts, the risks presented by
"free wheel" mode would have been abated (<u>Id</u>.).  In Plaintiffs'
view, the scooter is more dangerous than an ordinary consumer would
expect when used as intended or in a reasonably foreseeable manner
due to the dangerousness of the alleged incomplete gear and braking
systems (<u>Id</u>.).  Such incomplete systems, argue Plaintiffs, allowed
for the scooter to abruptly and without warning accelerate into a
reckless downhill free roll and proximately caused Adams' injuries
(<u>Id</u>.).  Plaintiffs argue that as their expert, Dr. Wright, has
critiqued ANSI standards as inadequate, they have provided ample
evidence that places at issue whether Defendant's compliance with

18

such standards is sufficient for them to avoid liability for design defect (Id.).   Moreover, argue Plaintiffs, their expert testimony shows it was technically and economically feasible to incorporate either an interlock system, indicator, or failsafe brake, and the failure to do so caused the accident (Id.).

Defendant replies that Plaintiffs' argument is unsupported that the gear and braking system did not allow for a means of stopping or slowing the scooter, which caused the scooter to accelerate "in a reckless, downhill free roll" without warning (doc. 96).   Defendant argues the record shows there was ample warning that no one should sit on the scooter while in free wheel mode, and the scooter should never be placed on an incline while in free wheel mode (Id.).   Defendant further argues that Plaintiffs have presented no evidence about how their proposed safety features would actually be designed (Id.).

Having reviewed this matter, the Court finds that material factual disputes preclude summary judgment for Defendant on Plaintiffs' design defect claims.   The Court has already rejected Defendant's attack on the testimony of Plaintiffs' expert witnesses, and agrees that such testimony creates a genuine issue as to the alleged design defects in this case.   A reasonable jury might find that the benefits of the scooter's gear and braking system, allowing for it to be pushed around after triggering the lever under the seat, do not outweigh the foreseeable risks.   The

19

jury might find a severe risk of runaway scooters in situations where consumers mistakenly mount the machine while in free wheel mode because no system prevents such a mistake or warns the user to dismount. A reasonable jury might also find that a scooter designed with no warning, interlock, or manual braking system is more dangerous than an ordinary consumer would expect when used in a reasonably forseeable manner: outside, where the world is full of slopes exceeding five degrees.

Although Defendant frames the case as if Adams knew the machine was in free wheel mode when she mounted it, the testimony in the case suggests she reasonably could have thought the scooter was in gear, or that it actually was in gear before popping out into free wheel mode. The testimony of James Floyd and Paul Anderson is that they placed the scooter on a relatively level area of the driveway. It is therefore an unfair characterization to state that Adams knew she was mounting the scooter in free wheel mode on a steep slope, contrary to the warnings she read. In conclusion, the Court finds it is appropriate in this instance for a jury to weigh the competing testimony, and to determine whether the scooter's braking and gear system was defectively designed. Plaintiffs have raised a genuine issue as to whether their proposed modifications would have prevented this accident.

**C. Failure to Warn**

Defendant next attacks Plaintiffs' claim under Ohio

Revised Code § 2307.76 that the warnings and information it provided with its scooter were inadequate, exposing Defendant to liability for failure to warn or inform (doc. 93). Under the statute a product is defective for inadequate warning if, when it left the control of the manufacturer 1) the manufacturer knew or should have known about a risk associated with the product that caused harm for which claimant seeks compensatory damages, and 2) the manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks compensatory damages and in light of the likely seriousness of that harm.  Ohio Revised Code § 2707.76.  A manufacturer cannot be held liable for failure to instruct about an open and obvious risk, or a risk that is a matter of common knowledge.  Id.

Defendant argues the warnings it provided in its manual, in bold-face type, reasonably apprised Adams of the danger of sitting on the scooter in free wheel mode, and to never put a scooter in free wheel mode on any incline (doc. 75).  In Defendant's view, reasonable minds could not find the warnings they provided inadequate, and therefore it is entitled to summary judgment (Id.).

Plaintiffs respond that their expert, Dr. Smith, is able to testify that the warnings were inadequate, based in part on his

21

opinion that there is a difference between using the word "danger," as opposed to the word "warning" (doc. 93).  Plaintiffs submit further that Dr. Smith is able to testify that the sequence of expectations posed by the manual is unreasonable and fails to provide the necessary safety conditions for the scooter (Id.). Plaintiffs argue Dr. Wright will also testify that the warnings provided were inadequate to apprise Adams of the substantial risks associated with the scooter (Id.).

Defendant replies that Plaintiffs merely offer conclusory opinions of their experts, who fail to design purportedly more adequate warnings, or to show how a more adequate warning would have prevented the accident in this case (Id.).  Defendant argues it has provided irrefutable evidence that its manual warned against the very issues in this case, and therefore it is entitled to summary judgment (Id.).

Having reviewed this matter, the Court finds a genuine issue as to the adequacy of Defendant's warning based on the testimony of Plaintiffs' experts.  The adequacy of Defendant's warning is properly in the province of the jury, which can evaluate the weight to accord to Plaintiffs' expert witnesses, and which can evaluate the manual in question.  This does not appear to be a strong case to the Court, but in the context of a summary judgment motion, the Court is required to take all inferences in favor of the non-moving party, here, the Plaintiffs, who have offered more

22

than a scintilla of evidence in support of their claim.  <u>Matsushita</u>
<u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).
Moreover, in the Court's view, the adequacy of a product warning is
a factual issue, and summary judgment should be used sparingly in
such a case.  <u>Seley v. G.D. Searle & Co.</u>, 67 Ohio St.2d 192, 197-98
(Ohio, 1981), <u>Blatt v. Hamilton</u>, No. 85AP-835, 1986 Ohio App. LEXIS
5907, *4 (Ohio Ct. App., March 6, 1986).  Finally, the Court notes
the jury can further determine whether Adams assumed an open and
obvious risk, which would remove any potential liability on the
failure to warn claim.  Ohio Rev. Code § 2307.76(B).

### D. Negligence

Plaintiffs also assert common law claims for negligent
design and negligent warning (doc. 43).[2]  These claims are similar
enough to her statutory claims that Defendant argues, citing <u>Tomkin</u>
<u>v. American Brands</u>, 219 F.3d 566, 575 (6th Cir. 2000), and <u>Delahunt</u>
<u>v. Cytodyne Technologies</u>, 241 F.Supp.2d 827, 843 (S.D. Ohio, 2003),
such that they may be preempted by the statute.  However, the Court
notes the Ohio Supreme Court explicitly found that a negligent
design claim is not preempted by the statutory scheme, <u>Carrel v.</u>

---

[2]The elements of a claim for negligent design are 1) a duty
to design against reasonably forseeable hazards, 2) breach of
that duty, and 3) injury proximately caused by the breach.
<u>Parsley v. Hamilton Beach/Proctor Silex, Inc.</u>, 494 F.Supp.2d 858
(S.D. Ohio 2006).  Similarly, the elements of a claim for
negligent failure to warn are 1) a duty to warn, 2) a breach of
that duty, and 3) proximate cause of the breach to plaintiff's
harm.  <u>Hanlon v. Lane</u>, 98 Ohio App.3d 148, 153, 648 N.E.2d 26
(Ohio Ct. App. 1994).

<u>Allied Products, Corp.</u> 78 Ohio St.3d 284, 677 N.E.2d 795, 800 (Ohio, 1997). The <u>Tomkin</u> decision noted <u>Carrel</u>, but in arriving at its conclusion, stated the plaintiff in <u>Tomkin</u> had not asserted a negligent design claim. 219 F.3d at 575. Because this case involves a claim explicitly recognized by the Ohio Supreme Court, and because Defendant has cited no authority explicitly excluding a common law negligent warning claim, the Court finds both claims are not preempted by the statutory scheme.

Defendant argues Plaintiffs fail to meet the elements of their negligence claims for all of the reasons argued in the preceding sections. The Court finds the same analysis is applicable, such that there are genuine factual disputes precluding summary judgment for Defendant on Plaintiffs' negligence claims.

### E. Loss of Consortium

Defendant argues correctly that Plaintiffs' loss of consortium claim is derivative of their underlying claims for design defect and inadequate warning. Because the Court has rejected the challenges to the underlying claims, the Court finds the loss of parental consortium also survives summary judgment.

## IV. Plaintiffs' Motion to Strike Affirmative Defenses

Plaintiffs bring a motion styled as a "Motion for Partial Summary Judgment to Strike Defendant Pride Mobility Product Corporation's Affirmative Defenses (doc. 80). Defendant, citing <u>Johnson v. Kindred Nursing Centers East, LLC</u>, No. 2:05-CV-00173,

24

2006 U.S. Dist. LEXIS 83904, *1 (S.D. Ohio, November 17, 2006), argues the motion should be more properly characterized as a motion to strike, and therefore should be barred as untimely under Civil Rule 12(f) (doc. 90).

The Court finds Plaintiffs' Motion unconventional, and agrees with the <u>Johnson</u> court that "summary judgment may only be obtained upon a claim, counterclaim, or cross-claim, not upon a defense." No. 2:05-CV-00173, 2006 U.S. Dist. LEXIS at *2. However, the Court finds it instructive to note that the substance of Plaintiffs' Motion is essentially subsumed into the Court's rulings on the above dispositive motions. Clearly, as the Court has found Plaintiffs have proffered adequate evidence to support their claims, there is no basis for a frontal attack for failure to state a claim. Further, Defendant has offered to dismiss its Third Affirmative Defense for failure to join necessary parties and/or claims; and correctly argue issues pertaining to damages are premature and will not be considered at this time (doc. 90).

The Court accepts Defendant's argument that Ohio Rev. Code § 2315.42, which was effective at the time of the accident, authorizes the use of the doctrine of assumption of risk as defense to product liability harm (<u>Id</u>.). There are sufficient facts in the record to support the theory, should the jury find Defendant's warnings sufficient, and reject the opinions of Plaintiffs' experts, that Adams assumed the risk of mounting the scooter while

in free wheel mode in proximity to a dangerous slope.  The Court will permit, therefore instruction to the jury on the doctrine of assumption of the risk.  Accordingly, Plaintiffs' motion is DENIED.

**V.  Conclusion**

Having reviewed this matter, the Court DENIES Defendant's Motion to Exclude Testimony of Plaintiffs' Expert Witnesses (doc. 60), DENIES Defendant's Motion for Summary Judgment (doc. 75), DENIES Plaintiffs' Motion for Partial Summary Judgment to Strike Defendant's Affirmative Defenses (doc. 80), but GRANTS Plaintiff's Motion for Voluntary Dismissal of the Fourth Cause of Action in the Second Amended Complaint (doc. 81).


SO ORDERED.


Dated: December 11, 2007   /s/ S. Arthur Spiegel
                           S. Arthur Spiegel
                           United States Senior District Judge